**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-2892
_____

ANDREA SUMMERS,
                                        Appellant
v.

THE CHILDREN'S HOSPITAL OF PHILADELPHIA

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-03479)
District Judge: Honorable Gerald A. McHugh

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on January 17, 2024

Before: JORDAN, BIBAS, and AMBRO, *Circuit Judges*

(Filed: January 23, 2024)

_____

OPINION*
_____

BIBAS, *Circuit Judge*.

Andrea Summers started working as a nurse's aide at the Children's Hospital of Phila-

delphia in 2000. Over the following seventeen years, she was disciplined ten times for

---

\* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

misbehavior ranging from lateness and absences to rudeness, insubordination, and failure to finish tasks.

Holly Sabatino started supervising Summers in 2017. In October 2019, Sabatino gave her another discipline notice for rudeness. Then, in July 2020, Summers called the hospital's compliance hotline and complained that Sabatino and another supervisor, Tracy Widmer, treated black employees worse than white ones. Because Summers is a black woman, she felt that she suffered unfair treatment. She also objected that another leader at the hospital had used the n-word the month before. That person was fired for using that word, but Summers still claimed that this incident suggested a pattern of discrimination at the hospital. And she complained that black nurse's aides had been told during COVID not to take breaks in the nurses' locker room, but she had seen a white employee often use the space. Apart from these incidents, she could give no specifics.

That October, Sabatino twice asked Summers to give patients medicines. Each time, Summers ignored her, threw her hands up in the air, and walked away. When Sabatino later met with Summers to discuss her behavior and to give a written discipline notice for rudeness, Summers stood up, tore the notice in half, threw the shreds, and left. Though the hospital could have fired her for her defiance, it instead put her on paid leave for a week and a half. Then Sabatino gave her another copy of the discipline notice, a final warning, and a plan requiring her to improve or be fired. Summers signed all three documents.

Three days later, Summers came back to work. That day, she was assigned to watch a patient constantly. She asked for and was approved to take a half-hour break but did not

return until an hour and forty-six minutes later. Because Summers had been absent without permission for more than an hour, Sabatino and Widmer decided to fire her.

Summers now sues the hospital under 42 U.S.C. § 1981, claiming that it fired her because of her race. The District Court granted summary judgment for the hospital, finding no proof of discrimination. We review de novo, reading the record in the light most favorable to Summers and drawing all reasonable inferences in her favor. *Tundo v. County of Passaic*, 923 F.3d 283, 286–87 (3d Cir. 2019).

The District Court got it right. Summers does not allege that any of her supervisors or coworkers used racial language to her, about her, or even in her presence. The hospital employee who used the n-word never supervised her or played any role in her firing, and he was immediately fired for using that word.

Nor does Summers allege that she was treated worse than any specific white employees. Though she claims that Sabatino and Widmer were condescending to black employees, she gives no examples and points to no one who was treated better. She admits that all nurse's aides were told not to use the locker rooms for breaks as a precaution against COVID. There is no evidence that Sabatino or Widmer knew that a white employee was using the locker room for breaks. And Summers admits that only the nurse's aides were taking breaks in there, so it makes sense that they were the ones who were told not to use it.

Even if Summers had made out a prima facie case, there is no reason to disbelieve the hospital's race-neutral explanation for firing her—that she was a poor employee. She had been rude and disrespectful to her supervisor's face. And three days after she got a second chance, she disappeared for more than an hour, abandoning a patient whose safety was in

3

her hands. The only reasonable inference is that Summers was fired for her repeated misconduct, not her race. We will thus affirm the District Court's summary judgment.